UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 05-10656 |
| | : | CHAPTER 11 |
| TIMOTHY J. SEIVERS, DEBTOR | : | |
| | : | |
|   DEPARTMENT OF TREASURY | : | DOCUMENT NO. 314 |
|   INTERNAL REVENUE SERVICE, | : | |
|   Movant | : | |
|               vs. | : | |
|   TIMOTHY J. SEIVERS, Respondent | : | |
| | : | |
|   TIMOTHY J. SEIVERS, Movant | : | DOCUMENT NO. 299 |
|               vs. | : | |
|   DEPARTMENT OF TREASURY | : | |
|   INTERNAL REVENUE SERVICE, | : | |
|   Respondent | : | |

APPEARANCES:

DONALD R. CALAIARO, ESQ., PITTSBURGH, PA, ATTORNEY FOR DEBTOR
BRITTNEY N. CAMPBELL, ESQ., WASHINGTON, D.C., ATTORNEY FOR THE
   DEPARTMENT OF THE TREASURY, INTERNAL REVENUE SERVICE

WARREN W. BENTZ, U.S. BANKRUPTCY JUDGE

NOVEMBER 29, 2007

# OPINION[1]

## Introduction

Timothy J. Seivers ("Debtor" or "Mr. Seivers") filed a voluntary Petition under Chapter 11 of the Bankruptcy Code on March 7, 2005. The Department of the Treasury, Internal Revenue Service ("IRS") received a Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines ("Notice") entered on the docket on June 2, 2005. The Notice provided

---

[1] This Opinion constitutes our findings of fact and conclusions of law.

that the deadline to file a proof of claim for a governmental unit was September 6, 2005 (the "Bar Date").  The IRS filed its proof of claim on April 12, 2006 (the "Proof of Claim").

The Proof of Claim is in the amount of $210,358.91.  The IRS asserts a general unsecured claim of $133.72 and an unsecured priority claim of $210,225.19.  All but approximately $2,000 of the total amount of the claim arises from civil penalties imposed against the Debtor as a responsible officer of Seivers Enterprises, Inc. ("SEI"), under 26 U.S.C., § 6672.

On April 20, 2006, Debtor filed its Objection to the claim of the IRS at Document No. 299 which asserts that the claim should be stricken because the IRS did not file its claim within the applicable time period allowed under the Bankruptcy Code; that the assessments against the Debtor under 26 U.S.C. § 6672 are improper as the Debtor was not a responsible officer of SEI during the relevant periods; and that the IRS did not assess the civil penalties under § 6672 within the applicable time period allowed under the Internal Revenue Code.

In its Answer to the Debtor's objection, the IRS posits that the Debtor was a responsible officer of SEI during all relevant periods; that all assessments against the Debtor were timely and raises as a defense that its failure to file a timely proof of claim was the result of excusable neglect and that pursuant to Fed.R.Bankr.P. 9006(b)(2), the Court may allow a late claim on the motion of a creditor where the failure to file a timely claim was the result of "excusable neglect."

The IRS then filed its MOTION FOR EXTENSION OF BAR DATE NUNC PRO TUNC at Document No. 314.  Debtor opposes an extension and asserts that the IRS had not alleged sufficient facts to demonstrate that the delay in filing a claim is due to excusable neglect.

In an Opinion and Order dated January 11, 2007, we set forth the elements that a party seeking to file a late claim on the basis of excusable neglect must prove.  We found that the

2

inquiry is fact intensive, and that we were unable to make a determination on the record that was before us. In re Seivers, 360 B.R. 461 (Bankr. W.D. PA 2007).

The parties were afforded a period of discovery on both Motions and an evidentiary hearing was held on October 18, 2007. We first heard evidence related to the late filing of the Proof of Claim and then continued with evidence on the responsible party liability. As we discuss below, we cannot find that the failure of the IRS to file a timely claim was the result of excusable neglect. Accordingly, the Proof of Claim will be stricken and we need not address the issue of Debtor's tax liability as a responsible officer of SEI.

**Facts as to Late Filing**

The SEI bankruptcy case was filed on February 27, 2004. In October 2004, the insolvency unit of the IRS assigned the SEI case to Revenue Officer Mary Arndt ("Arndt") to conduct an investigation to determine if SEI tax liabilities should be assessed to any individuals as responsible parties. Mr. Seivers and his spouse each owned 50% of the shares of SEI and Mr. Seivers served as its President.

Arndt determined that Mr. Seivers was a potentially responsible party and contacted him to explain the nature of the liability and to request a meeting. Arndt spoke with Mr. Seivers on December 3, 2004. Arndt made the following entry in the case history file:

> RECEIVED CALL FROM TIM SEIVERS. EXPLAINED THE TFRP INVESTIGTION [sic] PROCESS. WE WILL NEED TO SET UP A MEETING FOR THE 4180 INTERVIEW. TP WOULD LIKE HIS ATTORNEY, ROBERT LAMPLE PRESENT. SINCE LAMPLE IS IN PGH, SEIVERS IN GROVE CITY AND I AM IN BUTLER, I SUGGESTED A TELEPHONE INTERVIEW RATHER THAN TRYING TO SET UP A MEETING. TIM WILL CONTACT LAMPLE AND CALL ME BACK. TENTAVE [sic] TIME WOULD BE NEXT FRIDAY, DEC 10.
>
> TIM ASKED ME TO CALL LAMPLE DIRECTLY – EXPLAINED THAT, WITHOUT A PERSONAL POA, I MUST

> DEAL WITH HIM. ALTHOUGH LAMPLE IS REPRESENTING THE CORP, THIS IS A SEPARATE ISSUE.
>
> DISCUSSED THE PUB 1 AND TP'S RIGHTS. ADVISED THAT I WOULD BE SENDING HIM THE PUB, ALONG WITH THE 3164 EXPLAINING THIRD PARTY CONTACTS. SINCE HIS WIFE KAREN WAS ALSO AN OFFICER, I WILL ALSO SEND TO HER.
>
> BRIEFLY DISCUSSED THE ACTIVITY OF THE CORP. PER TIM, HE WAS ULTIMATELY RESPONSIBLE, BUT DID NOT ACTUALLY MAKE THE PAYROLL PAYMENTS OR THE DEPOSITS, BECAUSE EVERYTHING WAS DONE ELECTRONICALLY BY HIS ACCOUNTANT. SHE ASSURED HIM THAT EVERYTHING WAS PAID.
>
> DISCUSSED THE MISSING 941 FOR 200312 – HE WILL TRY TO LOCATE AND FAX TO ME BY DEC 17, 2004. IF NOT RECEIVED, I WILL HAVE TO 6020B BASED ON HIGHEST QUARTER, WHICH MAY RESULT IN A HIGHER TFRP LIABILITY FOR HIM.
>
> I WILL ALSO MAIL HIM THE 433A FOR COMPLETION, SINCE THIS DOES NOT HAVE TO BE COMPLETED DURING THE INTERVIEW. PER TIM, HE HAS LOST EVERYTHING AND WILL BE FILING CHAPTER 7. HE HAD PERSONAL GUARANTEES FOR ALL OF THE CORPORATE LOANS. THE BUSINESS FAILED, AND HE GOT STUCK FOR THE BALANCE OF THE LOANS.
>
> SECURED TP'S SSN, ■■■■■■■■. THIS IS THE SSN THAT I HAD IN MY FILE. IT DOESN'T MATTER AT THIS POINT WHETHER HE HAD AN OUT OF STATE ADDRESS – HE IS HERE NOW.
>
> PREPARING THE 3164s AND SETTING THE FOLLOW UP FOR DEC 10 FOR POSSIBLE MEETING.

When a meeting could not be arranged, Arndt proceeded with the investigation by the issuance of a summons in February 2005 to Sky Bank to obtain SEI's records.

Debtor's bankruptcy Petition was filed on March 7, 2005. Debtor did not list the IRS as a creditor. On or about April 11, 2005, IRS Bankruptcy Specialist, Janet Pickering ("Pickering"),

4

routinely obtained a case report from the Bankruptcy Clerk and opened a file for the Debtor.[2]  At that time, Pickering noted the file with the Petition Date, March 7, 2005, and that the Bar Date for the filing of proofs of claim by a governmental entity was fixed as September 6, 2005.

After Pickering opened the file, the case was processed through the IRS' Automated Insolvency System ("AIS"), a series of software programs designed to determine what liabilities the taxpayer-debtor owes the IRS.  Then a program known as the Case Assignment Guide ("CAG") assigns the file to an IRS employee based on the amount of the taxpayer's liability.  The AIS showed that Mr. Seivers had an outstanding tax liability of $1,400 for 1040 personal federal income taxes.  Based on the amount of the liability, the case was assigned to IRS employee David Milko ("Milko").

While Milko did not testify, Pickering stated that it is normal procedure for the IRS to go through the bankruptcy Petition to look for related entities.  The Debtor did not list in the Petition any pending bankruptcy case filed by any spouse, partner or affiliate of the Debtor.  The Petition does show Case Number 04-10477 as a prior bankruptcy case with a filing date of February 27, 2004.  Case Number 04-10477 is the SEI case.  The Petition also provides in Schedule B – Personal Property that Mr. Seivers owns 100% of the stock of SEI and provides in question 18 of the Statement of Financial Affairs the relationship to SEI, although the SEI taxpayer identification number is incorrectly stated.  Pickering testified that cases are typically cross referenced by name; that it would not be normal for an agent to review the liabilities of related corporations as they are a separate entity from the individual.

After the case was assigned to Milko, Milko made a decision not to file a proof of claim based on the IRS policy which fixed $5,000 as a minimum taxpayer obligation before the IRS

---

[2] The Court's records also show that the IRS received notice of the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors and Deadlines by electronic transmission on June 3, 2005.  This notice also states that the deadline to

5

will file a proof of claim in a Chapter 11 case. Milko then scheduled the case for an annual review on June 30, 2006.

On May 10, 2005, Arndt made a determination that Mr. Seivers was a responsible party for the SEI tax liabilities. On July 12, 2005, Arndt completed the necessary paperwork for forwarding to the appropriate persons within the IRS that are responsible for making the assessment against Mr. Seivers.

On August 12, 2005, the IRS issued civil penalty assessments against Mr. Seivers for SEI tax liabilities which are reflected on its Proof of Claim as follows:

| *Tax Period* | *Date Tax Assessed* | *Tax Due* |
|---|---|---|
| 12/31/2001 | 08/15/2005 | $37,639.08 |
| 03/31/2002 | 08/15/2005 | $13,670.60 |
| 09/30/2002 | 08/15/2005 | $33,470.23 |
| 12/31/2002 | 08/15/2005 | $123,174.74 |
| 03/31/2003 | 08/15/2005 | $227.63 |

When the assessment against Mr. Seivers was made, nothing was done within the IRS to alert the insolvency department or to have the assessment entered in the AIS system.

On February, 15, 2006, the case appeared on an "unfiled plan report" which triggered a review. The history sheet maintained by the IRS for Mr. Seivers' case contains an entry for February 15, 2006 which states:

> Case on unfiled plan report. Plan not yet filed. In quick case
> review found over $215,000 in trust fund assessed after petition
> date and bar date passed. Spoke with Janet and requested mgr
> reasign [sic] case. F/U 2-21-06.

The matter was reassigned to Pickering on February 22, 2006. Pickering made an entry in the history sheet on that date:

> 02/22/2006 added by jrpick23
> Proof of claim amount now in excess of $200,000 because of

---

file a proof of claim for a governmental unit is September 6, 2005.

6

> TFRP assessments – that were made 8-15-2005 – we were not aware of the proposed assessments at the time the case was initially reviewed and the determination was made not to file a claim because the amount due for the 1040's for 2003 & 2004 was below LEM V criteria ($5,000) to file a claim.
>
> Prepared a rough proof of claim and referring case to DC for determination of filing a late claim or filing a motion to allow a late claim.
>
> Follow up 3-20-2006 for response from DC.

Pickering referred the matter to IRS District Counsel for authority to file a late proof of claim. Pickering received approval for the late filing on April 7, 2006 and the Proof of Claim was filed on April 12, 2006.

As of April 12, 2006, Debtor had not filed a Disclosure Statement and Plan of Reorganization, but had made significant progress in the case. On April 7, 2006, this Court approved a settlement of long standing litigation between the Trustee of the SEI case and Mr. and Mrs. Seivers, under which the Seivers are obligated to pay a total of $225,000.

Debtor promptly filed its objection to the IRS Proof of Claim on April 20, 2006. Three months later, on July 20, 2006, the IRS filed its Motion to Extend Time Nunc Pro Tunc, for permission to file a late Proof of Claim.

### Issue

Whether the late filing of the IRS Proof of Claim is allowable for reason of excusable neglect.

### Discussion

> Pursuant to Fed.R.Bankr.P. 9006(b)(1), a bankruptcy court may allow a creditor to file a late claim "on motion made after the expiration of the specified period. . .where the failure to act was the result of excusable neglect." Fed.R.Bankr.P. 9006(b)(1).
>
> "Because Congress has provided no other guideposts for determining what sorts of neglect will be considered 'excusable,'

7

> we conclude that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 US 380, 395, 113 S.Ct. 1489, 1498 123 L.Ed.2d 74 (1993). "The determination whether a party's neglect of a bar date is 'excusable' is essentially an equitable one, in which courts are to take into account all relevant circumstances surrounding a party's failure to file." *Chemetron Corp. v. Jones*, 72 F.3d 341, 349 (3d Cir. 1995). "Under *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 US 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), Courts look to four factors: first, prejudice to the Debtors; second, length of delay and its potential impact on judicial proceedings; third, the reason for delay, including whether it was within the reasonable control of the movant; and, fourth, whether the movant acted in good faith." *In re American Classic Voyages Co.*, 405 F.3d 127, 133 (3d Cir. 2005) *citing Pioneer* at 395, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74. "All factors must be considered and balanced; no one factor trumps the others. "*In re American Classic Voyages Co.* at 133 *citing George Harms Constr. Co. v. Chao*, 371 F.3d 156, 164 (3d Cir. 2004).

In re Seivers, 360 B.R. 461, 463 (Bankr. W.D. PA 2007).

I.  Prejudice to the Debtor.

The IRS, as the party seeking to file a late claim, carries the burden of proving a lack of prejudice to the Debtor.  *In re Cable and Wireless USA, Inc.*, 338 B.R. 609, 614 (Bankr. D. Del. 2006). "Prejudice is not an imagined or hypothetical harm; a finding of prejudice should be a conclusion based on facts in evidence."  Id. *quoting In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999).

[6]  Relevant factors that may be considered in determining whether there is a danger of prejudice to the debtors include:
1)  whether the debtor was surprised or caught unaware by the assertion of a claim that it had not anticipated;
2)  whether allowance of the claim would jeopardize the success of the debtor's reorganization;

>3) whether allowance of the claim would adversely impact the debtor actually or legally;
>4) whether allowance of the claim would open the floodgates to other future claims;
>5) the size of the claim with respect to the rest of the estate;
>6) whether allowance of the claim would have an adverse impact on judicial administration of the estate; and
>7) whether all parties can be placed in the same situation they would have been in if the late filing had not occurred.
>
>*See In re O'Brien Environmental Energy, Inc.*, 188 F.3d 116 (3d Cir. 1989); *In re Garden Ridge Corp.*, 348 B.R. 642 (Bankr.D.Del. 2006); *In re Cable & Wireless USA, Inc.*, 338 B.R. 609 (Bankr.D.Del. 2006).

In re Seivers, 360 B.R. at 464.

Debtor was aware of the investigation by the IRS to determine his responsibility for the SEI tax obligations. Debtor, however, when contacted by Arndt stated that all the taxes had been paid. Therefore, we have to conclude that Debtor could have been surprised by the Proof of Claim.

Debtor had not filed a Plan and Disclosure Statement when the Proof of Claim was filed. Debtor had, however, taken significant steps in preparation of their filing, the most significant of which was the settlement of a long standing acrimonious litigation with the SEI trustee. Debtor agreed to make payment of $225,000. Knowledge of the Proof of Claim may have precluded such a settlement, and, the Proof of Claim, if allowed, will impact the Debtor's ability to comply with the terms of the settlement and interfere with the Debtor's ability to obtain confirmation of a plan.

We conclude that the allowance of the late filing of the IRS proof of Claim will prejudice the Debtor.

II. Length of Delay and its Potential Impact on
Judicial Proceedings.

The length of the delay in this case is approximately 7 months. The Bar Date was September 6, 2006 and the IRS filed its claim on April 12, 2006. There was a further 3 month delay until July 20, 2006 when the IRS filed the within Motion for Extension on Bar Date.
In addition to the actual amount of time that passed between the Bar Date and the late filing, the Third Circuit stated that courts should consider the "length of delay in absolute terms." *In re O'Brien*, 188 F.3d at 130 (emphasis added). In *In re O'Brien*, for example, the actual delay was only two months (i.e., the claim was fled [sic] two months after the Bar Date), but, in that two months, the debtor's Plan became effective. As such, the actual delay took on "significance mainly because of the intervening occurrence of the effective date of the Plan. . . ." *Id.* the Third Circuit held that the delay "should not be held to turn entirely on the urgency created by the debtor's time line. Such an approach makes the two month delay seem significant, whereas a similar delay [in another case] . . . would be insignificant." *Id.*
In this case, the length of delay is one year and eight months, but Appellants did file their claim before the confirmation of Appellees' Plan. The Court acknowledges that in many cases where excusable neglect arguments are rejected, the late claimants have filed after the confirmation date. *See, e.g., [Jones v. Chemetron Corp.,] Chemetron II*, 212 F.3d [199] at 205 [(3d Cir. 2000)] (excusable neglect argument rejected where late claimants filed two years after the confirmation date); [*In re* Trump] Taj Mahal [Associates], 156 B.R. [928] at 938 [(Bankr. D.N.J. 1993)] (excusable neglect argument rejected where late claimants filed more than one year after the confirmation date). Nonetheless, as the Bankruptcy Court stated, the delay in this case is not insignificant: "This debtor is well on the road toward trying to get a confirmable plan together. Having filed these claims at this point in time will jeopardize that process. It will certainly change distributions to other creditors within certain classes."

*Pacificorp and VanCott Bagley Cornwall & McCarthy v. W. R. Grace*, 2006 WL 2375371, Civil Action No. 05-764 (D.DE Aug. 16, 2006) *quoting, In re O'Brien*, 188 F.3d at 130 (emphasis added).

In re Seivers, 360 B.R. at 464-65.

The IRS relies on the fact that the Debtor had not filed a Plan and Disclosure Statement prior to the late filing of its Proof of Claim. During the delay Debtor effectuated a settlement requiring Debtor to make payment of $225,000. The settlement was the framework of a Chapter 11 Plan. In "absolute" terms the delay was significant both as to the change in position made by the Debtor during the delay and the impact on the bankruptcy proceeding.

### III.  Reason for Delay and Whether it was in Control of the Movant.

Not all factors are weighted equally. A crucial factor is the reason for the delay, including whether it was within the reasonable control of the Movant. In re Enron Corp., 419 F.3d 115 (2nd Cir. 2005).

The IRS was aware of its potential claim against Debtor at all times since late 2004 when it began its investigation. It was also aware from December 3, 2004 that Mr. Seivers intended to file a bankruptcy. The IRS received timely notice of the case and of the Bar Date for filing a Proof of Claim.

The IRS is a sophisticated creditor which files many proofs of claim and the duty to forward information to the proper department for filing the claim was solely within the control of the IRS. The procedures of the IRS in electing not to file proofs of claim under certain amounts and the failure to check its records prior to a fixed Bar Date are the reason for the delay.

### IV.  Good Faith of IRS.

There is no evidence that the IRS acted in bad faith.

## Conclusion

For the foregoing reasons, the Proof of Claim filed by the IRS will be disallowed as untimely and its Motion for Extension of Bar Date Nunc Pro Tunc will be refused. An appropriate Order will be entered.

/s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE | : | BANKRUPTCY NO. 05-10656 |
| | : | CHAPTER 11 |
| TIMOTHY J. SEIVERS, DEBTOR | : | |
| | : | |
| DEPARTMENT OF TREASURY INTERNAL REVENUE SERVICE, Movant | : | DOCUMENT NO. 314 |
| vs. | : | |
| TIMOTHY J. SEIVERS, Respondent | : | |
| | : | |
| TIMOTHY J. SEIVERS, Movant | : | DOCUMENT NO. 299 |
| vs. | : | |
| DEPARTMENT OF TREASURY INTERNAL REVENUE SERVICE, Respondent | : | |

## **ORDER**

This 29th day of November, 2007, in accordance with the accompanying Opinion, it shall be and hereby is ORDERED as follows:

1. The Proof of Claim filed by the Internal Revenue Service at Claim Number 24 on April 12, 2006 is DISALLOWED as untimely filed.

2. The Motion for Extension of Bar Date Nunc Pro Tunc filed by the Internal Revenue Services is DENIED.

/s/ Warren W. Bentz
Warren W. Bentz
United States Bankruptcy Judge